UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GILBERT CURTIS LOUIS, | ) | CASE NO. 3:08 CV 930 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| TERRY COLLINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 11, 2008, pro se plaintiff Gilbert Curtis Louis filed the above-captioned action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Director Terry Collins, Ohio Adult Parole Authority ("OAPA") Chairperson Cynthia B. Mausser, and ODRC Quality Assurance Chief Richard Spence. In the complaint, plaintiff alleges he has been unfairly denied parole. He requests that the Court "cease violations of Plaintiff's United States constitutional rights by these Defendants," ... and allow him to "present his tangible documents and hear the testimony of numerous staff that can and will attest to the facts mentioned herein the complaint." (Compl. at 7.) He also lists on the Civil Cover Sheet filed with his complaint, a demand for monetary damages in the amount of $ 750,000.00.

On May 12, 2008, Mr. Louis filed a Motion to Amend his Complaint in which he

asks to "add a Habeas Corpus Petition under § 2254 along with his 42 U.S.C. § 1983 action." (Mot. at 1.) The proposed petition mirrors the claims in the civil rights action and seeks release from prison.

**Background**

Mr. Louis abducted a seventeen-year-old girl from the street at gun point on November 10, 1981, and took her back to his residence. He shot her twice in the head and left her body in a vacant lot next to his home. The victim's younger brother witnessed the abduction and reported the crime. Police and the victim's mother discovered the body shortly thereafter. When questioned by police, Mr. Louis gave several statements in which he admitted abducting the girl and taking her to his home. A search of the residence yielded a significant amount of evidence which incriminated him. Mr. Louis was arrested on November 18, 1981 and was convicted of murder and abduction in September 1982. He was sentenced to eighteen years to life imprisonment.

In 1988, after serving six years of his sentence, Mr. Louis was informed by his Case Manager that he was eligible to apply for educational or vocational furlough. Mr. Louis submitted his application to the Furlough Committee, which was a division of the OAPA. His request was denied on October 31, 1988 based on the board's belief "that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety." (Am. Compl. Ex. A.) He was told his first parole eligibility hearing would be in April 1993.

He received parole review on November 19, 1992, and February 12, 1993. On both occasions, parole was denied based on the "serious nature of [the] crime." (Am. Compl. Exs. C and D.) His hearing was continued to April 1998.

Mr. Louis received notice of a half time review in July 1995 indicating to him that

the board would notify him if a review of his file suggested that a hearing should be held before the scheduled parole date. He was informed ten days later that the board did not find that his circumstances had sufficiently changed to warrant an interim hearing. (Am. Compl. Ex. G.)

In 1997, Mr. Louis submitted another request for furlough to the parole board. He included with his application a lengthy letter detailing his remorse for the crime and his social history. He claimed he dropped out of school to help earn money to support his mother and had been gainfully employed until a few months before he committed the murder which was his only crime. He stated upon his incarceration, he received counseling and began to avail himself of the educational and vocation programming offered by the prison. He indicated that he has been a model prisoner since that time. He submitted a letter from a supervisor indicating that he was a stellar employee. He asked that the committee consider him to be an experiment on the rehabilitation of violent offenders and promised that he would not violate even the most stringent conditions placed upon his furlough. His request was denied.

The following year, 1998, Mr. Louis was considered again for parole release. At that point he had served sixteen years and two months of his eighteen years to life indefinite sentence. He was again denied parole release. The board noted that he was serving time for his first adult felony, and also noted that "[h]e has established a commendable institutional adjustment, [but] [h]e has not availed himself of therapeutic programming." (Am. Compl. Ex. K-1.) His hearing was continued to April 2003.

Mr. Louis received two interim parole reviews. A half time review was conducted in August 2000. Noting that the "details of [the] offense support a purposeful killing during the commission of a kidnaping," the review committee noted that he was short of the recommended

3

guideline range and suggested that the board keep the April 2003 continuation date. (Am. Compl. Ex. M.) In addition, a special parole hearing was held in June 2002. The board recommended a departure from the guideline range "due to the young age of [the] victim & sexual overtones of [the] crime plus the fact the single action revolver negates an 'accidental shooting' since the victim was shot two times in the head." (Am. Compl. Ex. S-2). His next hearing date was kept at April 2003. Mr. Louis wrote letters appealing these decisions to the Quality Assurance Board of the OAPA claiming that he had been told to participate in therapeutic programming and he had done so. He felt he ought then to be considered for release. His appeal was denied.

Mr. Louis's last two parole hearings in May 2003 and September 2006 obtained the same result. In 2003, the board noted that "based on the brutality of the offense and the vulnerability of the victim, COBR voted to not release the inmate at this point in time. He is viewed as a more serious risk to the community. The board will revisit his case in September of 2006." (Am. Compl. Ex. U-1). In 2006, the board recognized his extensive program participation and good institutional adjustment, but concluded "release at this time would demean the seriousness of the offense and not promote the welfare of society." (Am. Compl. Ex. Z-2.) His next parole hearing is scheduled for November 2009.

In his complaint, Mr. Louis raises several claims to support his contention that he is entitled to be released on parole. First, he claims that the OAPA violated the prohibition of <u>ex post facto</u> laws by utilizing parole eligibility guidelines that were not in effect at the time of his sentencing. He next claims that the OAPA refused to follow the guidelines at his parole hearings and substituted its own discretion based on the nature of his offense. Third, he claims that the OAPA violated the separation of powers doctrine by placing him in offense category 13 for

4

aggravated murder at his half time review in 2000. He claims this amounted to an enhancement of his conviction and sentence. He wrote a letter to the OAPA chairperson pointing out the discrepancy. Mr. Louis does not indicate whether he received an answer but the Court notes that he was placed in the proper offense category, category 11, at his regular parole hearing in 2003. Finally, he claims he is a first time offender. He states that he has watched other inmates who were repeat offenders and offenders convicted of murder be paroled while he has been repeatedly denied release. He contends that these other inmates did not participate in rehabilitative programming and have shown no remorse for their crimes. He asserts his belief that the parole board has no intention of ever releasing him, thereby transforming his sentence into one of life without the possibility of parole. He claims this is an intentional abuse of their discretion, a denial of equal protection and a denial of due process.

**Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

dismissed pursuant to §1915(e).

While Mr. Louis lists several claims for relief, each can be summarized as a statement of his belief that he has served a sufficient amount of time on his sentence, participated in prison rehabilitation programs and had generally led an exemplary life in prison and therefore is entitled to release on parole. Prisoners, however, have no constitutional right to be conditionally released before the expiration of a valid sentence." Jago v. Van Curen, 454 U.S. 14, 20 (1981); Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). The decision to grant or deny parole to Ohio prisoners lies wholly within the discretion of the Ohio Adult Parole Authority. Van Curen v. Jago, 641 F.2d 411, 414 (6th Cir. 1981). Therefore, to the extent that Mr. Louis's claims rest on the faulty premise that he is entitled to release on parole at some time before the expiration of the maximum time of his indefinite sentence, in this case his natural life, they are without merit.

Mr. Louis first claims that the use of Ohio parole guidelines developed after the date of his conviction is an ex post facto violation. He then claims that the parole board did not follow the guidelines but instead used its own discretion to deny parole. The relevant inquiry in an ex post facto claim is whether the new guidelines present a significant risk of increasing the plaintiff's amount of time actually served. See Garner v. Jones, 529 U.S. 244, 255 (2000)("When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the current rule"); Michael v. Ghee, 498 F.3d 372, 380-85 (6th Cir. 2007). Mr. Louis can set forth an ex post facto claim in one of two ways. First, he can establish an ex post facto violation if the guidelines, on their

6

face, show a significant risk of increased incarceration. Garner, 529 U.S. at 255; Michael 498 F.3d at 384. Second, when the guidelines do not by their own terms show a significant risk, he may state a claim by "demonstrating by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]." Garner, 529 U.S. at 255; Michael 498 F.3d at 383.

Mr. Louis does not set forth a valid ex post facto claim. He does not challenge the guidelines on their face as creating a significant risk of increasing the amount of time he will serve. He does not even challenge them as an ex post facto violation as applied to him. In fact, he contends that the OAPA did not follow the guidelines to set a date for his projected release but instead used their own discretion based on the facts of his case. The OAPA is permitted to consider the specific facts of each case, and exercise discretion to deny parole release. See Michael 498 F.3d at 377. The failure to implement the guideline result is not an ex post facto violation.

Mr. Louis also raises a claim for denial of due process. A plaintiff bringing a § 1983 action for procedural due process must show that the state deprived him or her of a constitutionally protected interest in "life, liberty, or property" without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citing Parratt v. Taylor, 451 U.S. 527, 537 (1981)). A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). There is, however, "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. 1, 7 (1979). The Constitution of the United States does not require a state to provide a parole system. See Pennsylvania v. Finley, 481 U.S. 551 (1987). Moreover, the State of

7

Ohio has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system. Michael 498 F.3d at 387. Since a constitutionally protected liberty or property interest is not at issue, the Due Process Clause is not implicated by the denial of parole release.

Mr. Louis's equal protection claim also fails. He contends that he has been denied parole while other prisoners who are unrepentant repeat offenders with less than stellar institutional records are granted release. He claims this is a denial of equal protection. In this case, Mr. Louis is not objecting to the parole statutes and guidelines on their face as discriminatory, but rather appears to be claiming that the selective enforcement of these statutes has denied him equal protection. When a plaintiff asserts selective enforcement of a facially neutral law, he must demonstrate that the challenged practice had a discriminatory effect and that it was motivated by a discriminatory purpose. Wayte v. United States, 470 U.S. 598, 608 (1985); Farm Labor Organizing Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 533 (6th Cir. 2002). To establish discriminatory effect, the plaintiff must show that similarly situated individuals, who were not members of the class of individuals to which the plaintiff belongs, were treated more favorably. Farm Labor Organizing Comm., 308 F.3d at 534; City of Cleburne,Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985). The crucial question is whether one class of individuals is being treated differently from another class of individuals. Farm Labor Organizing Comm., 308 F.3d at 534. Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker...selected...a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." Personnel Admin. of Mass. v. Feeney, 442 U.S. 256, 279 (1979); Coyne v. City of Sommerville, 972 F.2d 440, 445 (1st Cir. 1992). A discriminatory purpose will not be presumed. Tarrance v. State of Florida,

8

188 U.S. 519, 510 (1903).

Mr. Louis has not identified any particular group to which he belongs that he claims is being denied equal protection. Merely treating two people differently does not violate the Equal Protection Clause. Rawls v. Sundquist, No. 96-5931, 1997 WL 211289, at *1 (6th Cir. Apr. 28, 1997). A policy or law will not violate the Constitution simply because it does not benefit all citizens equally at all times. Id. Although Mr. Louis alleges that other less qualified inmates were released on parole, he has not shown that these individuals are similarly situated to him. Aside from the fact that they are all prisoners, he has not suggested that the circumstances of their crimes and incarceration are the same. Even if some of the paroled prisoners were also convicted of murder, there are a wide range of circumstances and factual differences in the crimes which are taken into account when parole decisions are made. While it is clear that Mr. Louis feels that he would be a good candidate for parole, there is no suggestion in the pleading that he has been denied parole because of his membership in a protected class.

Finally, Mr. Louis asserts that the parole board violated the separation of powers doctrine by changing his offense category to that of aggravated murder at one of his half time reviews. The error was corrected by the date of his next actual parole hearing and the injury is therefore de minimis. Moreover, the separation of powers between a state trial judge and state parole board members is a matter of state law, not federal law. See Austin v. Jackson, 213 F.3d 298, 302 (6th Cir. 2000). Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966). The court, however, may exercise discretion in hearing state law matters. Id. at 726.

In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. Id. Having dismissed plaintiff's federal law claims, this court declines jurisdiction to hear plaintiff's state law claim.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

S/ JAMES G. CARR
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[2] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.